of America. We understand that there has been a motion to expand the argument time. We have not granted that motion, but you are advised that we would permit Council to complete the process until the clock expires. And so with that, we will ask the appellants to proceed. May it please the Court, Mason Morissette for the Skokomish Indian Tribe. At Council table is my colleague Sharon Hainsley. I also want to recognize the elected representatives and tribal representatives from the Skokomish Tribe who have traveled from the reservation up here today. I've put up on the board a map of the reservation and the project that is involved here. This is the same map that's in Addendum No. 2 to our opening brief. But just to remind all of us concerning the facts here, if there's no objection, Chief Judge, you can use a good laser pointer. No, there's no objection. I forgot to mention that Judge Berzon is not able to be with us in the courtroom today, Chief Judge. Are you here, Judge Berzon? Yes, I am. Thank you. Thank you. Yes, please. Yes, thank you. We were advised of that earlier. I hope that she can hear us all right. All right. But I must tell you that the microphone is there for recording purposes, and so anything that you say while you're pointing will not get picked up on it very well. All right. Thank you, Your Honor. I'll try to talk sideways and point sideways. Okay. Please. The reservation is down on Hood Canal. The project is up the river. It's up here at the top of the map as shown in map Addendum 2 in the brief. The powerhouses are on the river. The first one is on the river. The second one is down here on the Hood Canal at the corner of the reservation. North Flork flows almost directly south into its confluence with the South Fork, and then the main stem goes easterly and then northerly around the reservation. Mr. Moore said, where is the 8.8 acres that were the subject of the 1924 licensing? There is a map somewhere in the materials, Your Honor. Roughly on the map. And I can't quite remember that, but it would be up here in the upper part of the lake backed up onto National Park land. You can see Olympic National Park in the far northwestern corner of this map. And there was some original proposal from Tacoma to back up onto a small part of Olympic National Park forest land. I believe the project finally backed up on substantially more than originally indicated. But at any rate, it's all backed up here at the end of the northwestern end of the reservoir, basically. The facts of the result of this project, as we've put it forward, have been very devastating to this river because the two dams totally blocked the river. No fish passage. Secondly, the project de-waters the North Fork. Virtually all of the flow is taken out of the river, sent down some penstocks into powerhouse number two down here on Hood Canal. That has rendered the rest of the North Fork a trickle of its former self. The results of that have been the extirpation of major fish runs that existed at treaty times for the Skokomish people. The results of the backup of the dam has been the inundation of culturally important spots of usual custom fishing stations and the lack of flows in the North Fork. The removal of water has led to aggradation of the main stem and then resulting flooding and increasing of the water table of the reservation due to the fairly complex, but ultimately not too difficult to understand hydraulic concepts and phenomenon. We have therefore brought a case sounding in tort against Tacoma and the United States. The key seminal issue has been, before the district court and before the original panel in this case, whether this is a collateral attack on the original license issued by FERC concerning the project. And the parties have thoroughly briefed this and we want to get real clear what our position is on the collateral attack issue, which is central to whether or not a case can sound in tort against a licensee in this kind of situation. This is – Are you conceding that you don't have a cause of action against the United States? No. I'm not conceding that at all. That's – we believe we have a cause of action against the United States in tort, both under the – our theory of the case that this is not a collateral attack and both as allowed by the Federal Tort Claims Act. The – But you keep saying this is in tort. Are you – you have a 1983 cause of action here, don't you? That's correct. We also have a 1983 cause of action, which was dismissed by the court. What is the tort claim? Excuse me? What is the tort claim? What is it that – what are the actions of the United States for which you're bringing a tort claim? The actions are numerous. Interference with fishing rights, taking of fishing rights by an upstream user – What did the United States do to interfere? The United States – the claim against the United States is for failure to act under the Federal Power Act, failure to meet its trust responsibility to the Indian tribes to impose conditions. It's – it sounds to me like it is a claim for exercise of authority to regulate, and that's not covered by the FTCA. The FTCA covers any claim against the United States that you could bring against the private party. It makes the United States liable to the same The private party would be liable. The private party can't regulate. The private party has no trust responsibilities to Indian tribes. Aren't you really taking a Tucker Act claim and trying to turn it into an FTCA claim? No, I don't think so at all, Your Honor. The claim against the United States is a failure to comply with the Federal Power Act in terms of licensing a project so that it will not harm – Where has ever in the history of the FTCA been a case where a licensing decision has been subject to a tort claim? I don't know that there are any licensing cases. We cite – There is a license. Well, we cite several cases. We cite Berkovitz, in which the court held that the United States had an affirmative duty to properly approve vaccines before they were placed in the public. The court held that that was correct. The Berkovitz court cited the Indian towing case that said once there was an undertaking to operate lighthouses, the United States had a duty to continue to maintain the lighthouse and do its job. But this project wasn't maintained by the United States. The United States licensed the project. That's correct. It was not an action – this is not anything that you're suing for the United States' own conduct. It is based on a licensing decision. The United States has a duty under the Act to impose conditions – Why doesn't Section 803 of the Act simply preclude the action against the United States? I'm sorry, Judge – Why doesn't the statute itself simply preclude the action against the United States? 803C, I presume, is your reference. Yes, that's right. I think there's two answers to that. First of all, the activities that the United States did or didn't do do not directly – did or didn't do – do not directly relate to the operation or building of the project under 803. The United States' failure is to properly carry out the Act in the first place, in 1924, by demanding that there be conditions placed on the license to protect the tribe and the tribe's interests. The United States failed to do that. Is that a tort if the United States doesn't take action, I guess through the Secretary of Interior, to get conditions on the dam? Is that a tort claim? Well, I think that's the reading of Berkovitz and Indian Towing, that if it doesn't take action that a statute demands it take, that's a tort. I think that's the teaching of those cases. I understand, Your Honor, it could be a different reading, but that's – my reading is a statute says you'll license dams and works and you'll do the following things, and they didn't do it. It's like it's a statute that you license or regulate  So the United States approves a drug and the FDA approves a drug for sale to the public. FDA approves a drug for sale to the public, and it turns out the drug has serious side effects and people die. You think you can sue the United States because it didn't block the distribution of the drug? Well, Berkovitz seems to say that, that if there's a duty to check the efficacy of a drug and the United States fails to do it, they may be liable under the FDCA. What was the role of the United States in Berkovitz? Wasn't the United States actually supplying the drug? What, the drug, Your Honor? Wasn't the United States in Berkovitz actually supplying the drugs, not simply regulating them? I don't believe so. I'd have to reread the case, but I believe what then was a precursor of the current agency had to take two steps of approving the manufacture of the drug and also check the efficacy of individual batches before the drug company released them. And it was a regulatory operation, a regulatory duty that the United States had. Mr. Morrisett, I have a question about the other tort claims against the non-federal defendant. I'd like you to address for me, if you will, the statute of limitations question, because even assuming that a tort claim would otherwise lie, why wouldn't it be barred by the applicant of statute of limitations? There's a number of statutes of limitations and a number of causes of action. Key among them are claims that were reserved first by the United States and secondly by the tribe under 28 U.S.C. 2415, which reserves claims that have been examined and thought were viable by the United States or by the tribe. And it's clear that a number of those claims were reserved, and we've indicated in, I believe, our opening brief at least six claims involving fishing damage due to the dam that were reserved under that special statute, which essentially culls the statute of limitations until there's an affirmative action by the secretary to release them. But that statute, is that called the Indian Claims Limitations Act? Correct. Does that statute revive a claim if it had previously been extinguished? I don't believe so, sir. I don't believe that if the claim was not, there's a complicated scheme to list those claims, and then that was extended by Congress a number of times, and then finally there was a listing made that told the statute essentially forever until the secretary released them and said, we hereby reject them and you've got to decide on your own what to do, which has never happened. But I think if the claim had not been reserved at the proper time it couldn't be revived. The claim had to be viable when it was listed sometime after that statute was passed. I believe so, sir, yes. Counsel, was that issue resolved in the district court? Was this issue raised and resolved in the district court? It was raised. It was not resolved. The district court did not really deal with the 2415 tolling statute at all. Was there a trespass claim preserved? There is one listed, and the reason I'm sorry that I can't be clear on this. The records as to the details of these claims are, shall we say, in the bowels of the Bureau of Indian Affairs and the Department of the Interior, and it's difficult to find out exactly what was discussed. But there is a claim for trespass by the project, and exactly how far that goes at this point I don't know. We never got that far in the court below to explore the details of that. How do you describe the relationship between the tribe and the government in this case? Frequently these claims, claims like this are brought on behalf of tribes by the government. Is this a – what is the relationship here? In this case? In this case. We're adversaries and they're defendants. Right. But normally, are you – are you fiduciaries or what? Well, the United States is supposed to be and is a fiduciary for Indian tribes. They're supposed to bring claims for tribes. I've been at this 35 years, and I can say that most of the time they don't do those things for whatever reason. Lack of people to do it or whatever. But the United States generally is supposed to act as a fiduciary for an Indian tribe, particularly where any land is involved, because the United States owns the underlying fee of Indian land, and particularly where any treaty rights are involved. Counsel, if the claims were properly reserved, that would only toll the statute of limitations for Federal claims. Isn't that true? For claims protected under the Federal law, yes. What about the state law claims? The state law claims would be subject to a number of different statutes of limitations. And haven't all of those run? Not under our view of the case, no. There are a number of different statutes depending upon the cause of action. You don't have those memorized. They run anywhere from two to three years to ten years, depending upon the state law or common law basis. In your view, when did the statute of limitations begin to run on the state law claims? I think it depends on which cause of action we're talking about. In terms of the aggredation claims, it began to run when the United States and the tribe had information indicating that, in fact, And wasn't that back in February of 1989 at a minimum, that that was known? No, no. That's not our position at all. I know it's not your position, but that's the date on which a complaint was made, not a complaint filed, but a complaint was made to the Washington Department of Ecology. That's the date that a letter was written, Your Honor, by a former attorney of the tribe, alleging that Tacoma's actions were causing aggredation. We have briefed and maintained that that was an allegation based on a good guess, but no facts, which no one had, and that all the parties, Tacoma, the United States, and the tribe, all independently finally determined facts to support that allegation at a much later date, and only when those facts were known did the statute of limitations begin. And we've briefed those dates. I just don't recall them, but we do not look at the letter as the trigger date, Your Honor. Could you just clarify for me exactly what the federal causes of action are? You're characterizing them as tort claims, so I gather they're not claims under the treaty. Is that right? Well, the treaty is one of the bases for the property rights that have been damaged by the tortious action of Tacoma. So ultimately there are 1983 causes of action and FTCA causes of action, if that's what they are? No, I think the ‑‑ Are there federal common law causes of action also? We believe there's a federal common law cause of action. For what? The federal law cause of action is for the taking of fish guaranteed by the treaty and for destruction or partial destruction of the homeland, which the courts have universally held is the purpose of the reservation, is for a homeland for the tribe. And in this case, the homeland value has been seriously diminished, both by the removal of fish as well as the removal of water and the resulting flooding and other devaluing of the reservation property. If we were to disagree with your view on the approval of the statute of limitations for aggradation, what claims are left? Well, in addition to aggradation and all that flows from that, which is quite a bit, that's what causes the flooding and the destruction of the value of the property. If we were to say aggradation ‑‑ Judge Berzon, is that? I think that the turning of papers. All right, I will try. If we were to say that the aggradation-based claims are time barred, what other claims are left? All claims flowing from the loss of fish are not involved in the aggradation concept at all. All claims having to do with the inundation of usual custom fishing stations on the upper river and or inundation of cultural or religious sites on the upper river, those are all left. They're not a result of aggradation. Are those state law claims or federal claims? I think they're both. Under state law, we think the upstream riparian owner has damaged the downstream riparian owner's rights in fish and water, and there's state law cases to that. It's also a federal claim, I think conserved by 2415, in that it's damage to the tribe's fishing rights guaranteed by treaty, as well as guaranteed by under state law. I'm not sure where we are on time, Your Honor. I wanted to save a few minutes for rebuttal. You've got plenty of time. You've got over ten minutes. You've got over ten minutes. I'd like to save that for rebuttal, if I may. All right. Thank you. May it please the Court and members of the Sakomis tribe here today, on behalf of the United States, I would like to start out by saying that the panel's opinion. Could you give your name for the record? I'm sorry, Your Honor. My name is Phil Lynch, and I'm from the U.S. Attorney's Office in the Western District of Washington. The panel's opinion as to the United States' liability in this case brought by the Sakomis tribe is correct. The United States' liability under the Federal Tort Claims Act is under state law, under Washington state law, what liability would a private person have under the laws of the state of Washington. Laws or causes of action preserved by the Indian Claims Limitation Act are a separate matter from the claims filed under the Federal Tort Claims Act. The United States in this case was dismissed very early in this matter, and the city of Tacoma's brief very clearly discusses what claims are preserved under the Indian Claims Limitation Act, and the United States supports their position, which is the claims that were preserved are related to fishery claims and there are no trespass claims or other claims that are preserved under the Indian Claims Limitation Act. The panel's decision regarding the immunity of the United States to suit under 803C is correct. Why should 803C give the government a complete pass? 803 gives the government an out on a claim relating to constructing the dam or operating it. It seems that they assert broader claims than that. I don't know whether their claims are viable under other theories or if the government has other defenses, but why would 803 give the government a pass, let's say, on a claim that it violated a treaty obligation? Your Honor, I think the first part of the way I should answer that is when Mr. Morrissette raised the issue of the United States' breach of fiduciary duty to the tribe, those claims are properly brought into the Tucker Act in the Court of Federal Claims. But they're not immunized under 803? No, Your Honor. Okay. So they are making claims that aren't wiped out by 803? Your Honor, if they're for breach of fiduciary duty, right. But for claims, and I would point Judge Gould to the Ninth Circuit's opinion in Pacific Power and Light versus Bonneville Power Administration where the court held, the Ninth Circuit held that the proper way to look at this issue is to determine what the actions of a particular agency that are being challenged and the nature of the agency action at issue. In this case, the United States licensed under the predecessor to FERC the minor part license at issue in this case. And 803C immunizes the United States from liability for construction and running of the dam. They're also saying the Secretary of Interior didn't step up to the plate and try to get conditions that protected them. Your Honor, and I think that goes to the discretionary function exception to the Federal Tort Claims Act, which was not addressed by the panel in this case, but was addressed by Judge Burgess in his findings at the trial court level. The discretionary function exception, which is 28 U.S.C. 2680A, immunizes federal decision-makers in making decisions that implicate social, political, or economic policy questions. In this case, the different federal agencies involved in providing guidance to FERC before a licensing decision is made, there are many. Those are my clients in this case. And there are several agencies, Commerce, Interior, and FERC are the primary agencies who were involved. They provide input, but it is a discretionary decision on the part of FERC as to whether a license is issued. And even though the panel's decision just addresses the United States' immunity under 803C, both the discretionary function exception to the Federal Tort Claims Act and the statute of limitations under 2401, 28 U.S.C. 2401B also would preclude the tribe's action in this matter. So didn't the license itself require the government to take into account the needs of the tribe? Yes, ma'am. It does. But it also, because it's a policy or an economic decision, it immunizes from, as several Supreme Court cases say, judicial second-guessing of what was appropriate under the circumstances. Are you talking about the original licensing? Excuse me a minute. Are you just talking about the original licensing? Yes, ma'am. Okay. Go ahead. So is it your position that if the government totally abdicates its responsibility to protect the interest of the tribe, it's immunized? It's not immunized. And, again, it's the United States still would be responsible for the tribe for breach of its fiduciary duty and a Tucker Act claim. So it's not immunization of the government, but under the Federal Tort Claims Act, if it is a political, social or economic policy decision and discretion is involved, the Federal Tort Claims Act does immunize decisions made under those conditions. And it's your argument that a licensing decision fits within that rubric? Yes, ma'am. What about treaty violation claims, which I assume could be asserted against the United States? Is that under the discretionary function exception to the Federal Tort Claims Act, or is that a wholly different analysis? Your Honor, I think it's a different analysis because it is not. It's not a tort. It's not a tort. Okay. So what's your client's position? And I realize it's kind of hard when your client is the government and we've got a whole bunch of responsible agencies. But what's the position in response to the contention that the tribe was supposed to have a right to take fish at accustomed places and licensing of this dam may have wiped out their fishery? Your Honor, the FERC's position is that this matter is still under consideration in the D.C. Circuit Court of Appeals, which is remanded to FERC for further findings. And FERC at this point, and as Judge Gould knows, this has been a long, convoluted process, which is not over with. By the way, on the issues, the issue on the relicensing, that's currently before the D.C. Circuit. In that proceeding, did the tribe seek to get mitigation measures that would make up for past wrongs or only for the future? Your Honor, first of all, FERC is not allowed to award damages. I know they can't give compensatory damage. But FERC could say to get this license you have to build a fishway or another fishway, right? Yes, Your Honor. Or FERC could say to get this license you have to excavate the silt in the river and make the river deeper than it is. I mean, they could, presumably they could say a lot of things if they wanted to. Yes, Your Honor, and again, that would be based on matters presented to FERC or recommendations made to FERC by the other federal agencies involved in this process. What I'm wondering is whether did the tribe ask for that kind of relief in the relicensing proceeding before FERC? As I understand it, Your Honor, they have. And for want of a better expression, in the future, one of the points that is being considered by FERC is whether the tribe would be entitled to some sort of fees in the future for use of their land. Would FERC require the dam to be taken off the river, or would that be beyond their power? Your Honor, I'm not sure. I know there are two dams here, but, I mean, could FERC say, like Congress could in a statute, we're going to let you have power, but at some point you've got to remove all this? Your Honor, since the FERC and the Federal Power Act is supposed to be a comprehensive scheme for the management of waterworks in the United States, I suppose it could. I'm sure it would result in litigation from the city of Tacoma if it was proposed. Counsel, I guess what troubles me is that this dam was built a long time ago, or this project was. And at that time, very little was known about some of the collateral effects of building all these dams. At least that's my understanding of the history. And we've had to learn over experience what can happen as a result of damming these rivers for the early reclamation projects. And I guess my question is, if the government has noticed that the harm is happening and refuses to do anything about it, just watches and, as injuries take place and the fish die, and it doesn't, wouldn't necessarily have to be in relation to a fiduciary, a tribe, anybody, isn't at some point that the government responsible in tort for the loss of property that it's causing? Your Honor, as long as it was a claim that would be cognizable under the Federal Tort Claims Act, under State law, the United States would be. Well, under Washington law, if you control property and you see that it's doing harm to someone, can't, isn't there a tort? Yes, Your Honor. I believe there would be. And, again, it would be subject to the statute of limitations of the Federal Tort Claims Act and. Well, but do we know what, as a matter of law, what that is? I mean, why should we try to decide that here? The panel never reached it, as I understand it. No, Your Honor. I'm not sure that the record is very clear on that. No, Your Honor. The panel did not, and the Judge Burgess in the trial court did not. Did not. Because it was dismissed. Excuse me. It was dismissed under 803C. Right. So why, if we disagree with that, why shouldn't we, wouldn't it be sensible to remand on the statute of limitations point? To remand under the statute of limitations, Your Honor? If the court determined that the, that 803C did not immunize the United States and the court determined that the discretionary function exception did not apply, then, you know, I'm not trying to tell the panel. I'm not familiar with that. But those are issues that would be, would have to be addressed. Yes, Your Honor. With regard to the discretionary function exception, and this question may simply wash out in a statute of limitations, but assuming that it doesn't, the original licensing has basically been conceded to be an abuse of discretion, right? Because the original licensing was just for a minor part, and, in fact, it's later been determined that the, then FPC, now FERC, should have looked at all aspects of the project, and they didn't do it. Is that right? So in terms of the discretionary function exception, it would appear that there was a direct violation of what we now understand the statute to mean. Your Honor, I'm not sure I understand your question, so if I may. Okay. What I'm saying is that the discretionary function exception applies, does not apply if there is controlling statute or regulation that should have been followed but wasn't, right? Yes, Your Honor. Back at the time of the original licensing, we know from later events that that happened, that is that the FPC thought it was only to concern itself with the minor part license and not look at the whole project. And we now know that that was an erroneous construction of the statute and that they should have looked at the entire project and did not. Is that right? Your Honor, I think I understand what you're asking. First of all, when you used, when you asked about the discretionary function exception, in 1924, there was no discretionary function exception. There was no Federal Tort Claims Act. Right, I understand that. And what FERC has said in 1968 and in 1974 when it reconsidered Tacoma's application is that it was, its view of the law in 1924 when it issued the minor part license, and then in 1974 and subsequently in following years, said that they considered it a relicensing because they felt, even though they acknowledged that their view was mistaken, at the time under what the view at, in the Federal Government was that a minor part license was appropriate. So I'm not sure I'm answering your question, Your Honor, because of what you asked about the discretionary function exception. But the Federal Tort Claims Act didn't come into being, as you know, until the late 1940s. I understand. Thank you. Mr. Lynch, does the, does the, does the, does FERC have a position as to whether the tribe's challenge here, whether its case here is a collateral attack on either its original order or on its relicensing proceeding? Does the maintenance of the tribe's suit against Tacoma in any way attack or call into question either the FPC's original licensing order or FERC's relicensing order? The government's position is that it is a collateral attack, Your Honor. And, again, this is based on the fact that this is supposed to be a comprehensive scheme for management of dams and waterways in the United States. So FERC's position is that they still have this matter under consideration and they would like the opportunity to finish their determination and have it reviewed by the D.C. Circuit. FERC's position that it is both a collateral attack on the original 1924 license or simply on the relicensing proceeding? On both, Your Honor. On both. What would FERC like us to do here? Your Honor, I think that both FERC and the other Federal agencies involved would like the panel to find that the United States is not liable, but also. That's the free square and bingo. What's the next one? Okay. And would like this matter to be considered under the process of the Federal Power Act, that it be considered by FERC and then reviewed in the D.C. Circuit? Does FERC want us to hold off deciding this until the D.C. Circuit has completed its task in the original challenge to the license? Yes, Your Honor. How do you square that position with the text of 803C? Your Honor, and when I said that FERC would like this Court to hold off, that is assuming that. No, well, that as well as your position that this would be a collateral attack on either the original license or the relicensing proceedings today. I mean, 803C seems to give, you know, provide for a licensee to be subjected to damages. For a licensee to be subjected to damages. Right. I understood, Judge, the question to be directed at Tacoma. Well, and if it was, then I was mistaken in what I said. If it's against the United States, well, there's two parts, obviously. Right. And for the United States, the government's position. Maybe I misunderstood your answer to the question. That is, how does the suit against Tacoma amount to a collateral attack on either the original relicensing proceeding or the new proceedings that are underway? Your Honor, because the suit against the United States. I'm sorry. Take the United States out of the picture. Okay. The claim for damages against Tacoma. The claim for damages against Tacoma arises from the original minor part license and continuing action, which FERC's position is that that is a collateral attack on the licensing of the original project and the relicensing started. Is it seeking to modify or nullify the license in any way? It is seeking to change the decisions of FERC on the licensing of the. Your Honor, I suppose by the, it would be a challenge to what would happen with the dam. FERC says you can build a dam and Tacoma builds it, but if we say that a court or a jury can impose, you know, a billion dollars of damage, I guess that might be inconsistent with building the dam. So it seems like that might be a collateral attack to have a damage remedy. But the problem here in part is that in the first license proceeding, as I understand it, FERC has said they didn't consider the whole project. Is that right? You know, if they had considered the whole project and the effect on the tribe, then I would agree it would be a collateral attack. But if they didn't consider the whole project, they just considered, you know, a handful of acres in a minor parts license, then how is it a collateral attack on that proceeding? Your Honor, I. Should I wait? Your Honor, I think that the panel's decision makes it in the majority opinion, and of course this is one of the central points of this Court's dissent, is that the majority opinion feels and the opinion states that the interest of the Skokomish were considered in the original minor part license. I understand they were considered in the relicensing, and maybe the damage claim is a collateral attack on that. But it doesn't seem like, from what I've read, that in the initial licensing, they were really thinking about the tribe's overall interest. And, Your Honor, I believe that the majority opinion in the panel decision does say that the entire project was considered. But they didn't say the moon's made of green cheese. I mean, was it considered? What does the record show about what FERC considered in the initial proceeding? Your Honor, I think that in the panel's majority opinion, it states that the FERC was aware that it was going to affect the entire North Fork of the river. Is that really the question? What they may have been aware of or not aware of really isn't the question. They conceived of their licensing authority at that point as being limited to whether or not it was okay to flood 8.8 acres. And that is all they determined, and they were very specific about that being all they determined. So why would they have taken the tribe into account? Your Honor, they were, from the license that was issued, as Judge Trott pointed out in the majority opinion, they did consider the effect of the project on the Skokomish, even though they only issued a minor part license, because that was their view of what was allowed. They made some sort of finding in the statutory language of the Federal Power Act, I think, if I recall this right, that the license wouldn't affect any of the reservations affected. But as I read it in context, I thought that when they used the term reservation, they're talking about the reserved Federal 8 acres, not about the Skokomish reservation. Your Honor, in the license, it says, whereas the project, as hereinafter described, will be best adapted as a congressional scheme for improvement, and it goes on to say, and it will not interfere or be inconsistent with the purpose for which any reservation affected thereby was created or acquired. Right, but reservation there, what are they talking about? Are they talking about the Skokomish reservation, or are they talking about the Federal 8 acres, which is a reservation? The term reservation, I think, can refer to the Federal land. And it's the United States' position, Your Honor, that it refers to the entire reservation. Mr. Miller, what is the appropriate forum for resolving that kind of question? Is the appropriate forum a district court in this kind of damage action, or is the appropriate forum a court of appeals, whether ours or the D.C. Circuit, as a challenge to the substantial evidence supporting the issuance of the license? Your Honor, I believe that it is before FERC and then a circuit court of appeals. Counsel, excuse me. The point of order, are you sharing time with the Skokomish? Your Honor, I'm not sure how to answer that. I'm certainly willing to yield. No, I didn't know. We have two counselors. Right. And I didn't know whether you were taking the whole 30 minutes or whether you wished to give some to co-counsel. I'm happy to stop, Your Honor. No, I don't care. I mean, what was your point? I think they've got half an hour. Oh, okay. Better let Tacoma argue, because the feds will say, take them and let us go. Well, just to clarify, you don't have half an hour. You have five minutes. But we will let you say something, I guess. The entire time allocated to each side is 30 minutes. Well, no. It's okay. Just make your argument. May it please the Court. My name is Richard Criatura, and Mike Swiger is also sitting at counsel table representing the City of Tacoma. In preparing for this argument, I had the opportunity of reading a number of U.S. v. Washington and U.S. v. Oregon cases, and it struck me that ever since the early 1970s, when Judge Bolt issued his first decision, it became clear that the federal courts of the Ninth Circuit have been involved in the management of the fisheries of the Northwest, trying to balance tribal interests with other public and private interests, and state and federal regulations that deal with part of the issues in the absence of any congressional action providing a comprehensive plan to deal with all of the issues. This case is different because Congress has adopted a comprehensive plan with respect to water power projects and vested in the commission the authority to deal with all of these issues, subject to review in the Court of Appeals, and allowing the courts to assume their more traditional role of oversight as opposed to management of resources. This constitutes a collateral attack against that licensing process that should not be allowed. Counselor, what do we do with Section 803, and why isn't 803 authorization for the tribe to bring suit under whatever state laws Washington will permit against Tacoma, consistent with the overall scheme? Well, the last term, consistent with the overall scheme, is the only place I disagreed with you. 803C certainly authorizes state law claims, and there's Ninth Circuit authority on that. But it's in the interpretation of that license that's been provided by not only the courts of the Ninth Circuit, but also by the Second Circuit in Delora, which specifically said that 803C does not create a cause of action.     It's in the interpretation of the statute. Well, that's an entirely different question, of course. In other words, let's assume for the present that that's the case. The question is still whether 803C preserves whatever state cause of action might have existed, rather than preempting it or superseding it. Okay, to that extent I would agree. To the extent that 803C is used, it does preserve state law claims for violations, or any state law claims, against the licensee. When it comes to the state law claims, that's where the ICLA statute of limitations problem applies. And contrary to what was told to you by the counsel for the tribe, Judge Burgess specifically addressed that ICLA issue in his second order, granting summary judgment on the remainder of the claims, and ruled that all of the state law claims violated the statute of limitations. The longest statute of limitations on any of the state law claims is ten years for inverse condemnation. And in that circumstance, the Court noted that the lawyer for the tribe came to the conclusion over ten years before this action was filed that the aggradation claims, which are the state law claims, was caused by this project. And Judge Burgess specifically held that that meant that those state law claims violated the statute of limitations. So for state law claims under 803C, yes, it is allowed under the Act. But all of those violate the statute of limitations. What about the Federal claims? The Federal claims are a very different issue. And I would like to draw the Court's attention to the Pend Oreille case, in which some of you sat on panels for one of the three cases on appeal on the Pend Oreille case. In there, they said that if there were going to be Federal claims, that those would be dealt with not under 803C, but under 803E. And 803E allows for FERC to grant certain cost annual permit charges for using Federal lands or violating or imposing itself on Federal rights. Now, Pend Oreille is exactly the kind of case that is in opposite to what you have here. In Pend Oreille, the licensee failed to disclose what would happen when they inundated this property. Contrary to that, in our case, FERC, or previously the FPC, was fully aware of the entire scope of this project. But the FPC didn't license the entire scope of the project. Isn't that just an insuperable barrier to your argument? They only licensed the flooding of 8.8 acres. They did not license anything else. I think what you will find when you review the license is that they took into consideration the entire project in granting this license. Why does it matter what they took into account? Why doesn't it matter what they licensed? Whatever they might have had in their heads, why does that matter? If we're going to find supersession by something, it seems to me it has to be what they actually did, and all they did was license 8.8 acres. To the extent that the court thinks that this court is limited to 8.8 acres, I would ask you to consider two things. One is, if that was going to be a dispute, that dispute should have been resolved by filing an appeal in the Court of Appeals pursuant to the Federal Power Act. That is where the jurisdiction lies in the event that you disagree that the minor part license authorizes the entire project. That isn't the question. The question is whether, at the time, they took a narrow view of their authority and they only did X. And if they only did X, presumably it's only with regard to X that they made any binding decision on anything. Nobody has to be complaining about that in order to come back now and say, well, other things damaged us. The City of Tacoma damaged us by doing things that were not licensed by the federal government. Well, I would respectfully disagree to the extent that if the United States, acting as trustee for the tribe, or the United States itself felt the minor part license was not sufficient to operate the entire project, then the United States, acting as trustee for the tribe, should have filed an appeal in the Court of Appeals at that time. I would also note now that exactly the same arguments have been made before FERC, and FERC in two specific rulings have ruled that even though it was only a minor part license that was issued, it authorized the entire project. I would like to read from the 1998 decision. It says that although the commission found that the minor part license it had issued was under-inclusive, it did not invalidate them. Rather, it continued to recognize their legal force and effect. It also came to the same conclusion in 19, excuse me, 1995, when they issued the same order. And they said that although the commission found that the tribe's license was a minor part license, it did not invalidate that license simply because they ultimately found that that rule was changed. How about the relicensing? When we have the relicensing proceeding, there's no dispute that relates to the whole project, right? There's no dispute it relates to. Now, in that proceeding, which is now on appeal before the D.C. Circuit, did the tribe ask to be compensated for the same problems, not by damages, which can't be awarded, but by some kind of mitigation? Yes. And that's what the congressional scheme anticipates, is mitigation and terms and conditions and enhancements. And, in fact, the tribe, if you look to the first page of the 1998 FERC decision, it lists exactly the identical claims that are being brought in this action as what the tribe was requesting in that action. And also to address an earlier question that you had, Judge Gould, is that the FERC ultimately decided that they could look backwards and try to remedy some of the things that they found was inadequate with the first license. If you go to their 1998 decision, they say, in both our relicensing ruling and our declaratory order on the nature of the proceeding, we clearly stated that past environmental effects are relevant and may be taken into account for purposes of our analysis for providing terms and conditions. Now, we didn't happen to agree with that, but that's what FERC held. What's the city's position on the issue raised by Judge Bybee as to whether we should put this issue kind of in abeyance until the D.C. Circuit resolves the FERC appeal on the relicensing? Frankly, Your Honors, I think abeyance is not the right answer, because in our opinion this is a case that there is no jurisdiction in this Court to deal with these issues. And to leave it in abeyance is to leave that issue open, because it would only allow for a collateral attack after FERC issues its rulings. And how are we to deal with these inconsistent rulings? What if FERC comes to a conclusion that major differences have to occur for the relicense? Is this Court then going to reevaluate those and say, well, in light of those, we're going to reduce the damages to only $5 billion instead of $6 billion? Is that really the process that this Court wants to go through? I think the Court clearly needs to state that this belongs in FERC and not in this Court. All right, counsel, we've been very generous with your time. Are there any other burning questions on the part of the panel? All right. Thank you. Your Honors, with the Court permission, I have also prepared a handout that just deals with the historical document. All right. If you will provide copies of that. Has opposing counsel seen it? Has opposing counsel seen the handout? Not yet. They're only excerpts of the record. It's a three-page summary. All right. Well, show it to counsel and provide copies to the Court. May it please the Court, let's clarify where the license is and why this is not a collateral attack on the new license. The new license is not before the D.C. Circuit Court. It's before FERC, remanded by the D.C. Circuit to FERC. Secondly, we have asked for a number of things in the licensing. Is there a license currently in effect? No. Is that right? Sorry, Your Honor. Is there a license currently in effect? The only license in effect is the so-called annual license, which FERC made perpetual a few years ago, a one-page saying you can continue on under your original license. That's the only license in effect. Mr. Moore said if we permitted a Tacoma jury to consider damages to the tribe from loss of their fishery, and the FERC, at the same time, was imposing some type of mitigation award as a condition of the license going forward, wouldn't that either be a double recovery or require a revision of what damages could be claimed in your damage case? No. No. There's a constant obfuscation on this point. The tribe asked for a number of major changes in this license because obviously no conditions were made originally. And the United States, by the way, has joined in those, as has the State of Washington. We asked for fish passage, which may be ladders, elevators, whatever, increased flows, a number of matters to mitigate for future operations. But wouldn't fish ladders affect your scope of damages for a lost fishery? No. I don't know how they would affect the last 70 years in which tribal members have not had the fish to catch, have not had the income from the fish. It would prospectively, hopefully, rebuild the fishery back to some reasonable level. It's not going to compensate for the last 70 years. So we keep getting these things mixed up. The current license has to stand on its own under the Federal Power Act. Your Damage Act only covered damages up to the 1970s? Up to the 1970s. Would your complaint permit a claim for damages for the idea that the whole fishery is wiped out or the river is too shallow for fish? Does it permit those damages? It permits. We've asked for damages for loss of fishing up until the original date of the complaint on the theory that there was no allowance for fisheries made in the original license. In 1974, the commission simply rolled over the license and allowed the conditions to continue and the damage to continue, and has done so until today. But that's on appeal, right, in the FERC, on a remand from the D.C. State. The damage case is on appeal right here. No, I understand. But what you want, the conditions you want, which would make the river more navigable or add fish ladders or more passage of fish, that's currently under appeal. That's currently back before FERC. That's why I clarified that. And that is there are license conditions now that deal with this which have been joined in aggressively by the United States itself as saying, yes, we have to do these things prospectively. And the State of Washington has joined. So if I understand your position, that's for the future, but now what you're concerned is what happened in the past? That's right. These are damages for the fact that this project was never property licensed, no conditions were ever made, and the FERC did not consider this reservation. We've had some confusion about that, about what reservation they're talking about. But if the conditions were not imposed, isn't that attacking the license that was issued? It's hard for me to get my brain around it. I mean, either the license is okay or it's not okay. And if it's not okay, then aren't you attacking it necessarily? The license was fine. I'm sorry. Is that the forum to do it in? The license was fine as to what it did. It didn't do anything. But that's an attack on the license. Your Honor, what would you have attacked? I'll ask this rhetorically. In 1924, when they issued an 8.8-acre flooding license. I would have gone right in and said, wait just a minute. It doesn't have an effect on 8.8 acres. It's going to cut off our riparian rights coming down, because we're downstream from this thing and we're going to get hit. What doesn't have an effect? They didn't ask for anything else. It's in the record. Correct. The application. The application. The application indicates the construction of two dams and the location, and it's on the map. I understand what the license is for, but everybody knew what was being applied for. I don't think that's true. The application actually says this application is made solely because of the fact that the project will flood said portion of said Section 10. So the application itself was also limited to the flooding and nothing else. That's correct. In fact, in the record at RXF at page 327 and 328, if you review the application, they talked about transmission lines extending from the powerhouses to the boundary of Mason County. Do not say right smack dab through the middle of an Indian reservation. They didn't ask for that. FERC didn't license it. There's no navigable streams involved. There was. The application itself was so minimal that you would have to go into FERC and said you've licensed a very minor thing. Now either say very clearly you can't do anything else or what? It took until the 1990s to realize there was an effect on fisheries? No, it didn't take until the 1990s, but we've gone through attempts the tribe made and briefed it extensively to try to get a handle on what Tacoma was doing clearly outside the law. Your Honor, their approach to this whole case has been you didn't tell us, we can't do it, so therefore we're going to do it. Every now and then in their theory they could have built three dams because it didn't matter what they did. They could have diverted another two or three rivers nearby. None of this was in the license. What took so long to get a handle on it? Excuse me? What took so long to get a handle on it? On what, Your Honor? On the case. Well, the tribe. Waiting for you to mature or what? If you review our briefs, you'll see that the tribe tried a number of mechanisms and was rebuffed, including by the United States, who told it it could not use funds to sue and would have to let the United States sue for it and then refuse to do so. Isn't that how the statute of limitations runs? You try things, you try this, you try that. What you have to do is file a lawsuit or get an explicit consent to the tolling of statute of limitations. It looks to me like the latest tribe knew about this in 89. What? The tribe did preserve many of the claims in 2415, Your Honor. How? That's what the 2415 claims process was. They listed these as claims. The Secretary of Interior listed them as protected claims under that statute until a full investigation could be made. To clarify one thing you said earlier, I gather that you agree that that preservation does not apply to any state cause of action, right? Maybe that's correct, Your Honor. Okay. So I just want to be very clear that our view is that the licensing proceeding stands on its own. This is not a collateral attack on that. We must follow the Federal Power Act and the cases that have been cited to you many times in appealing or complaining about the license, current license, and its prospective effect. The FERC itself has admitted it has no jurisdiction over past damages and no jurisdiction to order damages for what has been done in the past in a case which was clearly not licensed or activities were not licensed. What about Mr. Creatura's argument that the FERC recognized that they could consider past environmental damage in prescribing mitigation for the future? I think that means that they are looking as to what has happened to determine what they have to do to stop it from happening in the future. Now that they know aggradation is a problem, they have ordered in their license, which they have back now, for example, a study to determine what kind of flushing flows should be taken into account, because they realize the lack of those has caused serious damage. And in that sense, they are looking at the past to see what they should do for the future. But restoring the river will not compensate the tribe for the last 70 years of damage, and they have no authority to issue an order to that effect. To be more clear about your argument on the role of the Federal FERC licensing authority now, is your argument determined by the limited nature of the original license, or would you make the same argument if there was an ultimate license in this proceeding, that you could still bring a damages action of the same kind if it turned out not to work? No, our argument is not that we could bring a damage action if the current license did not work. We must appeal the current license if we find anything wrong with it. And you're not going to be able to bring a damage action for anything that is allowed in the current license. It's all because the prior license was so incredibly and so extremely limited that this issue arises. Is that right? That's correct. That's correct. Your time has expired. Thank you. Thank you, Judge. The case just argued is submitted for decision. That concludes the court's argument for the second, and the court stands adjourned.
judges: Schroeder, Pregerson, Kozinski, Rymer, Graber, Gould, Paez, Berzon, Rawlinson, Bybee, Callahan